CORA C. WILKENING, Respondent, *v.* GLADYS MARY MOORE, Also Known as MARY PICKFORD, Appellant.

First Department, May 16, 1919.

Principal and agent — contract — action under alleged agreement for commissions in procuring contract for moving picture actress — evidence insufficient to establish that plaintiff was sole producing cause of contract — verdict against weight of evidence.

In an action to recover commissions under an alleged oral contract between the plaintiff and the defendant, a celebrated moving picture actress, under which the plaintiff was to act as the defendant's adviser and personal representative, with reference to future contracts with moving picture concerns, and to receive a commission of ten per cent, evidence examined, and *held*, insufficient to establish that the plaintiff was the sole producing cause of a contract entered into by the defendant, and that a verdict in favor of the plaintiff is against the weight of the evidence.

APPEAL by the defendant, Gladys Mary Moore, from a a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 7th day of November, 1918, upon the verdict of a jury, and also from an order entered in said clerk's office on the 15th day of November, 1918, denying defendant's motion for a new trial made upon the minutes.

*Francis M. Scott* of counsel [*O'Brien, Malevinsky & Driscoll,* attorneys], for the appellant.

*George Edwin Joseph* of counsel [*Henry C. Quinby* and *Henry Staton,* attorneys], for the respondent.

MERRELL, J.:

The plaintiff has recovered a judgment against the defendant for $108,839.07 and costs.

The plaintiff's business, as she testified upon the trial, was representing authors and prominent artists of reputation in placing their works and photo-plays upon the dramatic stage and also for publication. The defendant is a motion picture actress of wide repute. The plaintiff testified that she met the defendant, Gladys Mary Moore, popularly known by her maiden name, Mary Pickford, in the year 1914. The acquaintance between the parties commenced at the scenario department of the Famous Players Studio on West Twenty-sixth street in the city of New York. In the summer of 1914 defendant entered into an arrangement with the plaintiff whereby the plaintiff undertook to syndicate certain written matter, being autobiographical sketches descriptive of the life history of the defendant. At that time the defendant was a widely known and perhaps the most popular moving picture actress with which the public was acquainted. Some discussion was had relative to the compensation which the plaintiff should receive for her services in procuring an advantageous contract for defendant's life history and, according to the testimony of the plaintiff, it was agreed that the latter should receive for her services ten per cent of whatever defendant derived from such publication. Thereafter the plaintiff procured a contract in behalf of the defendant with the McClure Syndicate for the publication of defendant's biographical matter, from which plaintiff received in the aggregate $24,043.30. Subsequently to the employment of plaintiff by defendant to thus commercialize her literary work it was agreed between the parties that instead of ten per cent the plaintiff should receive from defendant a commission of five per cent upon whatever defendant should receive from such publications. It was conceded upon the trial that there remained due plaintiff from defendant upon such contract a balance of $839.07, for which amount defendant conceded plaintiff was entitled to a verdict of the jury.

Plaintiff further testified that in December, 1915, she had a conversation with Miss Pickford, the defendant, relative to a contract which the latter then had with the Famous

Players, a corporation organized by defendant and one Adolph Zukor for the purpose of producing moving picture films. Under the contract in existence between defendant and the producing company at that time, defendant was guaranteed $2,000 per week and was entitled to receive one-half of the net income of said company. The plaintiff testified that defendant visited her at her office and expressed concern as to defendant's future business arrangements; that defendant claimed that her mother, who had theretofore advised her, was in ill health, and that she feared she was not well enough to take the responsibility of looking after defendant's affairs, and that Mr. Zukor, with whom she was associated, had made a proposition whereby she was to have a half interest in a new company to be organized similar to the one then in operation, and that Zukor was willing to increase her weekly drawing to $4,000; that her attorneys advised her that the proposition was a good one, but that inasmuch as the plaintiff had secured so profitable a contract with the McClure Syndicate for the publication of her literary work, she doubted whether her attorney really knew her value; and that it was rumored that Charley Chaplin, a prominent moving picture artist, was about to sign a contract for the largest sum of money ever paid any actor, and that she, defendant, could not see why Mr. Chaplin had a greater value with exhibitors than she had. Plaintiff testified that defendant wanted her to take entire charge of the matter of advising her and finding her real value, and that defendant then asked her what her terms would be for such service; that plaintiff replied that her terms would be ten per cent, to which defendant agreed, and expressed willingness to pay plaintiff such percentage for her coming business arrangement upon all she should receive. Plaintiff testified that defendant expressed a preference to continue business relations with Mr. Zukor, as she felt he had handled her interests to her advantage, and that if he could be made to see that she was worth a larger amount of money, she would prefer remaining with him. According to plaintiff's testimony, some discussion was had between the parties, and it was finally agreed that plaintiff should undertake to procure for defendant the desired contract. Plaintiff testified that negotiations were carried on

by her with several prominent producers of moving picture films. She testified that first she was instrumental in procuring a contract to be executed between the defendant and one Hampton whereby defendant was guaranteed a drawing account of $7,000 per week for a number of years, with a guaranty to the defendant that she should receive at least $1,000,000 for the first year. The contract with Hampton, however, failed to materialize. Negotiations were had with another producer of moving picture films whereby it is claimed that the defendant received an offer of $8,500 per week. Finally, plaintiff claims to have been instrumental in securing for defendant a contract with the same corporation with which she was then engaged, and which was represented by Zukor, whereby defendant was to own a half interest in the business and was guaranteed for a period of two years, or 104 weeks, a drawing account of $10,000 per week. Such a contract was in fact entered into by defendant with said producing company. Plaintiff testified that she was the producing cause of the contract which was finally executed by the defendant with Zukor. Defendant denies that plaintiff was such producing cause, and asserts that her new arrangement with Zukor was made without any assistance from plaintiff, and that the latter was never known in the transaction. It was conceded upon the trial that the defendant had received from Zukor or from the company which he represented, in consideration of her services pursuant to said contract, the sum of $1,080,000, which amount was paid to the defendant in cash. Plaintiff claimed upon the trial that she was entitled, under her alleged contract with the defendant, to ten per cent, amounting to $108,000. The jury rendered a verdict in plaintiff's favor and against the defendant for the amount thus claimed, together with the sum of $839.07 conceded to be plaintiff's due from defendant upon the McClure contract. Upon such verdict judgment was entered in plaintiff's favor and against the defendant for $108,974.12. From said judgment and from the order denying defendant's motion for a new trial upon the usual grounds, defendant has appealed to this court.

Upon the trial the defendant testified that the only contract that she ever entered into with the plaintiff was with

reference to the publication of her life history, upon which contract there concededly remained unpaid said sum of $839.07. Defendant denied that she ever made any contract with the plaintiff whereby the latter was to act as her adviser and personal representative with reference to any contract with moving picture concerns.

Thus there was presented upon the trial a sharp question of fact, and we are called upon to determine whether or not the verdict of the jury is sustained by the testimony.

Upon the trial the learned trial court instructed the jury that it was incumbent upon the plaintiff, in order that she might recover for her alleged services, not only to show that the defendant had entered into the contract as claimed by plaintiff, but that the plaintiff was the sole and only producing cause of the Zukor contract. To such instruction of the jury plaintiff's counsel acquiesced. The issues were thus narrowed down to the determination of the questions as to whether or not the parties contracted with each other as claimed by the plaintiff and as to whether, under the alleged contract, the plaintiff was the sole producing cause of the contract entered into between the defendant and Zukor from which she realized $1,080,000. Such submission of the issues of the action thus became the law of the case, and unless by competent testimony upon the trial the plaintiff has established a cause of action against the defendant the verdict of the jury cannot stand. From a careful reading of the evidence I am convinced that the jury was in some manner misled into the rendition of a verdict which was clearly against the weight of the evidence and, indeed, unsupported by credible evidence. At the time plaintiff alleges the defendant agreed to pay her ten per cent of all she should receive from her artistic work in consideration of plaintiff's taking charge of her business affairs and advising her and, as plaintiff claims, " finding her real value," defendant was concededly a star of the first magnitude in the moving picture firmament. She, at the time, was enjoying a most profitable contract with Zukor, from which she was receiving handsome returns, and was offered from the same producer to share equally in the receipts from his business and a guaranty of a drawing account of at least $4,000 a week, and yet, if the plaintiff

is to be believed, she was willing to contract to pay plaintiff one-tenth, not alone of any sum she should be able to procure for her as income beyond that then enjoyed, but that percentage on whatever might be received from a contract which plaintiff might be able to secure for her. That defendant was not driven to the necessity of securing the services of plaintiff, who was apparently a novice at the particular work which she claims she was to undertake for the defendant, is clearly demonstrated by the willingness of those prominently engaged in the production of moving picture films to enter into contracts with the defendant whereby they were willing to guarantee to defendant an income of $1,000,000 or over a year. Defendant herself was apparently a business woman of no mean ability. She had the personal attendance and counsel at all times of an attorney, a business manager, and her mother, who was apparently a woman of sound business judgment and experience. Defendant had not only received large financial returns from the production of moving pictures, but had been engaged in scenario writing, had sold the use of her name for magazine and newspaper articles, had permitted its use in the advertisement of toilet preparations and cosmetics, and in other ways had manifested a marked degree of thrift and ability to accumulate money. It taxes one's credulity to believe that the defendant, circumstanced as she was, would enter into a verbal contract with a comparative stranger, inexperienced in the particular role she assumed, whereby she was to pay the latter one-tenth of her receipts in consideration of acting as her business adviser and in " finding her real value." It is claimed by plaintiff that the alleged conversation between her and defendant was entirely private. It seems to me most improbable that with all of defendant's apparent thrift and money-making ability, she would voluntarily offer to turn over to the plaintiff, without any effort on the latter's part, $400 per week, which would be the amount of percentage which she was earning at the time plaintiff alleges the contract was made. Not only is the story of the plaintiff quite improbable, but throughout her examination plaintiff's testimony was of a character to raise doubt as to its truth. Upon cross-examination, in response to inquiries by counsel for the defendant, plaintiff

denied that in March, 1916, several months after she claims she had entered into this contract with defendant, she had verified an affidavit, a copy of which was submitted to her and which she carefully read and examined, and in which she had stated to the commissioner of deeds before whom she verified said affidavit, that she had a contract of no character under which there was any money due her, except with a corporation known as C. C. Wilkening & Company, Inc. Indeed, plaintiff positively denied that she had ever given an affidavit to said commissioner of deeds, and denied absolutely the making of any affidavit, a copy of which was produced to her. Subsequently the commissioner of deeds was called as a witness, the original affidavit signed and verified by the plaintiff was produced and introduced in evidence. The commissioner of deeds testified as to the circumstances concerning the verification of such affidavit, and although the plaintiff was recalled in rebuttal, she did not deny such testimony or in any way explain the same. Plaintiff testified that prior to the making of the contract between defendant and Zukor, she had on at least four occasions conferred with Zukor, either personally or by telephone, relative to a contract with the defendant. Zukor testified that he never had any negotiations whatever with the plaintiff relative to his entering into the contract with defendant. Defendant, her mother and business manager testified as to an occasion of their visiting plaintiff's office in March, 1916, soon after an article had appeared in a New York paper to the effect that plaintiff was acting as defendant's representative, and all three testified that when plaintiff was told of such publication she became much excited and disclaimed any responsibility whatever therefor, and promised to take up the matter with the newspapers and have the same refuted. Thereupon, plaintiff, the defendant, her mother and her business manager, according to their testimony, went into an adjoining office occupied by a brother of the plaintiff, and plaintiff there, in the presence of her brother, promised that the publication should be denied. Plaintiff does not deny the testimony of defendant, her mother and business manager as to such occurrence, nor was her brother produced upon the trial to deny the same or his absence in any manner accounted for.

In view of such circumstances and the apparent unreliability of plaintiff's testimony, it seems to me that the verdict of the jury was clearly against the weight of the evidence. Taking plaintiff's testimony in its most favorable aspect, I do not think that the jury were justified in finding under the instructions of the court that the plaintiff was the sole producing cause of the contract in question. Zukor denies that the plaintiff had any connection whatever with the contract, and denies that plaintiff ever communicated with him in respect to a contract with defendant or as to any of his relations with said defendant. Defendant denies that plaintiff in anywise was instrumental in bringing Zukor and herself together. The undisputed fact appears that defendant was already engaged with Zukor and was anxious to continue business relations with him. The very most that plaintiff could claim under her own testimony is that by reason of her activities in discovering other producers who were willing to contract with the defendant upon more favorable terms than those which she was then enjoying, Zukor was induced to enter into the profitable contract which defendant finally obtained. This falls far short of establishing that plaintiff was the sole producing cause of the contract in question. Indeed, upon a careful consideration of the whole evidence, we are convinced that defendant's contract with Zukor was obtained without the assistance or procurement in any degree of the plaintiff herein, and that said plaintiff failed to present upon the trial evidence of sufficient probative value to justify the verdict rendered.

I am, therefore, of the opinion that not only was the verdict of the jury clearly against the weight of the evidence, but that under the law of the case as established by the presiding judge, the evidence fails to show that the plaintiff was the sole producing cause of defendant's contract.

The judgment and order appealed from should be reversed and a new trial granted, with costs to the appellant to abide the event.

CLARKE, P. J., LAUGHLIN, DOWLING and PAGE, JJ., concurred.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event.